FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 1 8 2025

SEAN F. McAVOY, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

1  Richard R. Barker
2  Acting United States Attorney
   Eastern District of Washington
3  Lisa C. Cartier Giroux
4  Assistant United States Attorney
   Post Office Box 1494
5  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
6
7
8
9              UNITED STATES DISTRICT COURT
10         FOR THE EASTERN DISTRICT OF WASHINGTON

11  UNITED STATES OF AMERICA,

12                    Plaintiff,          Case No.: 4:24-CR-06031-MKD-2

13
14              v.                        Plea Agreement

15  JOSE ANTONIO GUZMAN-GARCIA,

16                    Defendant.

17
18
        Plaintiff United States of America, by and through Richard R. Barker,
19
   Acting United States Attorney the Eastern District of Washington, and Lisa C.
20
   Cartier Giroux, Assistant United States Attorney for the Eastern District of
21
   Washington, and Defendant Jose Antonio Guzman-Garcia ("Defendant"), both
22
   individually and by and through Defendant's counsel, J. Gregory Lockwood, agree
23
   to the following Plea Agreement.
24
        1.    Guilty Plea and Maximum Statutory Penalties
25
        Defendant agrees to enter a plea of guilty to Count 2 of the Indictment filed
26
   on November 7, 2024, which charges Defendant with Possession with Intent to
27
   Distribute 400 Grams or More of Fentanyl in violation of 21 U.S.C. § 841(a)(1),
28
   (b)(1)(A)(vi), a Class A felony.

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not less than 10 years and up to a lifetime;

    b.    a term of supervised release of not less than 5 years and up to a lifetime;

    c.    a fine of up to $10,000,000;

    d.    denial of certain federal benefits pursuant to 21 U.S.C. §§ 862 and 862a; and

    e.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

PLEA AGREEMENT - 2

3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

      a.    sentencing is a matter solely within the discretion of the Court;

      b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

      c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

      d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

      e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

      f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

      a.    pleading guilty in this case may have immigration consequences;

      b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 3

1        c.    removal from the United States and other immigration
2              consequences are the subject of separate proceedings; and
3        d.    no one, including Defendant's attorney or the Court, can predict
4              with absolute certainty the effect of a federal conviction on
5              Defendant's immigration status.
6    Defendant affirms that Defendant is knowingly, intelligently, and voluntarily
7    pleading guilty as set forth in this Plea Agreement, regardless of any immigration
8    consequences that Defendant's guilty plea may entail.
9        5.    Waiver of Constitutional Rights
10   Defendant understands that by entering this guilty plea, Defendant is
11   knowingly and voluntarily waiving certain constitutional rights, including the
12   following:
13       a.    the right to a jury trial;
14       b.    the right to see, hear and question the witnesses;
15       c.    the right to remain silent at trial;
16       d.    the right to testify at trial; and
17       e.    the right to compel witnesses to testify.
18   While Defendant is waiving certain constitutional rights, Defendant
19   understands that Defendant retains the right to be assisted by an attorney through
20   the sentencing proceedings in this case and any direct appeal of Defendant's
21   conviction and sentence, and that an attorney will be appointed at no cost if
22   Defendant cannot afford to hire an attorney.
23   Defendant understands and agrees that any defense motions currently
24   pending before the Court are mooted by this Plea Agreement, and Defendant
25   expressly waives Defendant's right to bring any additional pretrial motions.
26       6.    Denial of Federal Benefits
27   Defendant understands that by entering this plea of guilty, Defendant may
28   no longer be eligible for assistance under any state program funded under part A of

PLEA AGREEMENT - 4

1  Title IV of the Social Security Act (concerning Temporary Assistance for Needy
2  Families) or benefits under the food stamp program or any state program carried
3  out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that
4  the Court may deny Defendant's eligibility for any grant, contract, loan,
5  professional license, or commercial license provided by an agency of the United
6  States or by appropriated funds of the United States. 21 U.S.C. § 862.

7       7.    Admissibility of Facts and Prior Statements

8       By signing this Plea Agreement, Defendant admits the truth of the facts set
9  forth in the Factual Basis section of this Plea Agreement and agrees that these
10  facts, along with any written or oral statements Defendant makes in court, shall be
11  deemed usable and admissible against Defendant in any subsequent legal
12  proceeding, including criminal trials and/or sentencing hearings, under Federal
13  Rule of Evidence 801(d)(2)(A).

14       Defendant acknowledges, admits, and agrees that by signing this Plea
15  Agreement, Defendant is expressly modifying and waiving Defendant's rights
16  under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410
17  with regard to any facts Defendant admits and/or any statements Defendant makes
18  in court.

19       8.    Elements of the Offense

20       The United States and Defendant agree that to convict the Defendant of
21  Possession with Intent to Distribute 400 Grams or More of Fentanyl (Count 2), in
22  violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi), the United States would have to
23  prove beyond a reasonable doubt the following elements:

24          a.    *First*, on or about November 2, 2024, in the Eastern District of
25                Washington, Defendant knowingly possessed any controlled
26                substance;

27          b.    *Second*, Defendant possessed it with the intent to distribute it to
28                another person; and

PLEA AGREEMENT - 5

     c.    *Third*, the controlled substance that Defendant possessed with intent to distribute equaled or exceeded 400 grams of a mixture or substance containing Fentanyl.

9.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

At the end of October 2024, law enforcement received information a source that an individual, later determined to be Eduardo GONZALEZ-RODRIGUEZ (GONZALEZ-RODRIGUEZ), had sold half a kilo of cocaine to the source at GONZALEZ-RODRIGUEZ's residence located at 21823 Webber Canyon Road, Benton City, WA, an address previously known to law enforcement from an ongoing investigation. The source explained that on that date, the source entered the residence where GONZALEZ-RODRIGUEZ had the cocaine already weighed up. The source reported that the source had placed an order for an additional kilo of fentanyl powder for an agreed price. Law enforcement reviewed text message communications between the source and GONZALEZ-RODRIGUEZ that corroborated the cocaine purchase and the kilo of fentanyl on order with him.

On or about November 1, 2024, a state search warrant was authorized for real time and historic locations for RODRIGUEZ-GONZALEZ's cell phone.

On that same date, law enforcement used the source to arrange a controlled buy for fentanyl pills in the Benton/Franklin County area. Prior to the controlled buy, the source communicated with RODRIGUEZ-GONZALEZ and arranged to

PLEA AGREEMENT - 6

1  buy the fentanyl pills. RODRIGUEZ-GONZALEZ subsequently advised he was

2  ready to deliver and was ready to meet at a predetermined location. The source

3  then received a phone call from "Tony", later identified as Jose Antonio

4  GUZMAN-GARCIA (GUZMAN-GARCIA) that he was ready to meet at the

5  predetermined location on behalf of RODRIGUEZ-GONZALEZ. GUZMAN-

6  GARCIA then arrived at the predetermined location in a white GMC Sierra and

7  delivered fentanyl pills to the source in exchange for United States currency.

8  Subsequent testing by the Drug Enforcement Agency (DEA) laboratory confirmed

9  that the amount received was 105.636 grams of fentanyl (DEA Exhibits 102 and

10  103).

11      The source received text messages from RODRIGUEZ-GONZALEZ and

12  GUZMAN-GARCIA indicating that the kilo of fentanyl powder would not be

13  delivered on Saturday (11/2/2024) but the fentanyl pills (20 "boats") were

14  available. On or about November 2, 2024, state search warrants were granted for

15  GUZMAN-GARCIA's car, RODRIGUEZ-GONZALEZ's car and house. The

16  same day, DEA along with the Tri-Cities METRO Drug Task Force executed the

17  search warrants. A traffic stop was conducted on the white GMC Sierra (WA plate

18  D01907F) being driven by GUZMAN-GARCIA, and the black Dodge Ram (WA

19  plate D25067C) being driven by RODRIGUEZ-GONZALEZ. The execution of

20  the search warrant on the GMC Sierra yielded two vacuum-sealed packages of

21  fentanyl pills. Subsequent testing by the DEA laboratory confirmed that the

22  packages contained 2163.5 grams of fentanyl (DEA Exhibit 200). The execution

23  of the search warrant on the Dodge Ram yielded a cellular device and a wallet

24  previously removed from the person of RODRIGUEZ-GONZALEZ at the time of

25  his arrest. The wallet contained a large amount of United States currency. The

26  money in RODRIGUEZ-GONZALEZ's wallet included the pre-recorded buy

27  money from the purchase of the fentanyl pills by the source from GUZMAN-

28  GARCIA on or about November 1, 2024.

PLEA AGREEMENT - 7

1    Investigators also executed the state search warrant at RODRIGUEZ-
2  GONZALEZ's residence in Benton City the same day. During the execution of the
3  search warrant, investigators located cocaine and a small baggie of fentanyl pills.
4  Subsequent testing by the DEA laboratory confirmed that 457.2 grams of cocaine
5  (DEA Exhibits 201 and 202) and 1.223 grams of fentanyl (DEA Exhibit 203).
6  Investigators also found four firearms.  The cocaine and firearms were found in the
7  master bedroom along with dominion and control documents belonging to
8  RODRIGUEZ-GONZALEZ.  Additional baggies commonly used to package drugs
9  for distribution to end users and a digital scale were also located along with the
10  controlled substances and firearms.

11    During a post-*Miranda* statement, GUZMAN-GARCIA admitted to being
12  involved in the distribution of controlled substances.

13    During a post-*Miranda* statement, RODRIGUEZ-GONZALEZ admitted to
14  being involved in drug trafficking.

15    During a search of GUZMAN-GARCIA's cell phone, investigators found
16  messages between him and RODRIGUEZ-GONZALEZ coordinating the delivery
17  of the 20,000 pills (i.e. the 20 "boats").

18    All of the foregoing events occurred in the Eastern District of Washington.

19    10.    The United States' Agreements

20    The United States Attorney's Office for the Eastern District of Washington
21  agrees that at the time of sentencing, the United States will move to dismiss Count
22  1 of the Indictment filed on November 7, 2024, which charges Defendant with
23  Conspiracy to Distribute Fentanyl and Cocaine, in violation of 21 U.S.C. § 846.

24    The United States Attorney's Office for the Eastern District of Washington
25  agrees not to bring additional charges against Defendant based on information in
26  its possession at the time of this Plea Agreement that arise from conduct that is
27  either charged in the Indictment or identified in discovery produced in this case,
28  unless Defendant breaches this Plea Agreement before sentencing.

PLEA AGREEMENT - 8

11.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    *Base Offense Level*

The United States and Defendant agree and stipulate that the base offense level is 32 as a total of at least 3,000 KG but less than 10,000 KG of Converted Drug Weight applies, and Defendant's relevant conduct for sentencing purposes should be calculated based on this amount, pursuant to USSG §1B1.3. See USSG §2D1.1(c)(4).

b.    *Special Offense Characteristics*

The United States and Defendant stipulate and agree that no special offense characteristics should apply[1]. *See* USSG §2D1.1(b).

c.    *Role Adjustments*

The United States and Defendant agree to recommend no role adjustment is warranted. *See* USSG §§3B1.1; 3B1.2.

d.    *Safety Valve*

The United States and Defendant acknowledge that Defendant may be eligible for the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Defendant understands that only if the Court finds that Defendant meets the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5) shall the Court impose a sentence in accordance with the applicable sentencing guidelines without regard to any statutory minimum sentence.

---

[1] While the United States believes there is evidence that GUZMAN-GARCIA was aware that RODRIGUEZ-GONZALEZ owned firearms, the United States is not seeking the application as there is no evidence that he knew where the firearms were being kept or for what purpose.

PLEA AGREEMENT - 9

1          e.    *Acceptance of Responsibility*

2        The United States will recommend that Defendant receive a downward

3 adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if

4 Defendant does the following:

5            i.     accepts this Plea Agreement;

6          ii.    enters a guilty plea at the first Court hearing that takes

7                      place after the United States offers this Plea Agreement;

8          iii.   demonstrates recognition and affirmative acceptance of

9                      Defendant's personal responsibility for Defendant's

10                    criminal conduct;

11          iv.   provides complete and accurate information during the

12                    sentencing process; and

13           v.    does not commit any obstructive conduct.

14        The United States and Defendant agree that at its option and on written

15 notice to Defendant, the United States may elect not to recommend a reduction for

16 acceptance of responsibility if, prior to the imposition of sentence, Defendant is

17 charged with, or convicted of, any criminal offense, or if Defendant tests positive

18 for any controlled substance.

19          f.    *Zero Point Offender Reduction*

20        The parties take no position at this time as to whether Defendant is eligible

21 for any reduction. The parties are free to argue for or against eligibility after the

22 Presentence Investigation Report is issued. *See* USSG §4C1.1.

23          g.   *Agreements Regarding Representations to the Court*

24        The United States has a duty of candor to the tribunal. If the United States

25 and Defendant do not agree on the appropriate length of incarceration, the

26 appropriate length or applicable terms of supervised release, and/or the correct

27 guidelines calculations, variances, departures, and/or enhancements, the United

28 States reserves the right to respond to any and all arguments made by Defendant,

PLEA AGREEMENT - 10

on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv.    The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

    v.    The United States and Defendant may each respond to any arguments presented by the other;

    vi.    In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis,

PLEA AGREEMENT - 11

including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.   In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.  The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

h.    *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

PLEA AGREEMENT - 12

i.    *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

12.    Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States and Defendant may each recommend any legal term of incarceration.

13.    Supervised Release

The United States and Defendant each agree to recommend five (5) years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is,

PLEA AGREEMENT - 13

even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

      a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

      b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

      c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

14.   <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

…

…

PLEA AGREEMENT - 14

15.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes on any grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

PLEA AGREEMENT - 15

1  Nothing in this Plea Agreement shall preclude the United States from
2  opposing any post-conviction motion for a reduction of sentence or other attack
3  upon the conviction or sentence, including, but not limited to, writ of habeas
4  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

5      19.    Withdrawal or Vacatur of Defendant's Plea
6      Should Defendant successfully move to withdraw from this Plea Agreement
7  or should Defendant's conviction be set aside, vacated, reversed, or dismissed
8  under any circumstance, then:

9          a.    Any obligations, commitments, or representations made by the
10               United States in this Plea Agreement shall become null and
11               void;

12         b.    The United States may prosecute Defendant on all available
13               charges;

14         c.    The United States may reinstate any counts that have been
15               dismissed, have been superseded by the filing of another
16               charging instrument, or were not charged because of this Plea
17               Agreement; and

18         d.    The United States may file any new charges that would
19               otherwise be barred by this Plea Agreement.

20     The decision to pursue any or all of these options is solely in the discretion
21 of the United States Attorney's Office.

22     Defendant agrees to waive any objections, motions, and/or defenses
23 Defendant might have to the United States' decisions to seek, reinstate, or reinitiate
24 charges if a count of conviction is withdrawn, set aside, vacated, reversed, or
25 dismissed, including any claim alleging a violation of Double Jeopardy.

26     Defendant agrees not to raise any objections based on the passage of time,
27 including but not limited to alleged violations of any statutes of limitation or any
28

PLEA AGREEMENT - 16

1  objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth
2  Amendment.
3      20.    <u>Integration Clause</u>
4      The United States and Defendant acknowledge that this document
5  constitutes the entire Plea Agreement between the United States and Defendant,
6  and no other promises, agreements, or conditions exist between the United States
7  and Defendant concerning the resolution of the case.
8      This Plea Agreement is binding only on the United States Attorney's Office
9  for the Eastern District of Washington, and cannot bind other federal, state, or local
10 authorities.
11     The United States and Defendant agree that this Agreement cannot be
12 modified except in a writing that is signed by the United States and Defendant.
13                     <u>Approvals and Signatures</u>
14     Agreed and submitted on behalf of the United States Attorney's Office for
15 the Eastern District of Washington.
16 Richard R. Barker
17 Acting United States Attorney
18
19 _____ FoR: _____ 3/18/25 _____
   Lisa C. Cartier Giroux                        Date
20 Assistant United States Attorney
21     I have read this Plea Agreement and I have carefully reviewed and discussed
22 every part of this Plea Agreement with my attorney. I understand the terms of this
23 Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and
24 voluntarily. I have consulted with my attorney about my rights, I understand those
25 rights, and I am satisfied with the representation of my attorney in this case. My
26 attorney has advised me that by pleading guilty to the charges relevant to this Plea
27 Agreement, as of this date deportation appears to be a virtual certainty. No other
28 promises or inducements have been made to me, other than those contained in this

PLEA AGREEMENT - 17

Plea Agreement.  No one has threatened or forced me in any way to enter into this Plea Agreement.  I agree to plead guilty because I am guilty.


_____          03/14/2025
Jose Antonio Guzman-Garcia                Date
Defendant


     I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I have further advised my client by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.


_____          3/14/25
J. Gregory Lockwood                       Date
Attorney for Defendant


### Interpreter Certification

     I hereby certify that I have read and translated the entire foregoing document to Defendant in a language with which Defendant is conversant.  If questions have arisen, I have notified Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.


_____          3-14-25
Written Name: Ben Rump                    Date
Interpreter


PLEA AGREEMENT - 18